## OKLAHOMA CITY MILL & ELEVATOR CO. v. PAMPA GRAIN CO.

(District Court, N. D. Texas, at Amarillo. September 30, 1916.)

### No. 111.

SALES ☞200(3)—CONTRACT FOR SALE OF GRAIN—DELIVERY.

Plaintiff contracted with defendant for the purchase of several carloads of wheat, which were shipped by defendant, consigned to itself, and bills of lading, indorsed by defendant, with drafts attached, were forwarded to plaintiff, which accepted and paid the drafts. Before reaching plaintiff's elevator, some of the carloads were destroyed in the great Galveston storm. Both parties were members of the Texas Grain Dealers' Association, whose rules required an exchange of confirmations of sales in writing expressing the terms of the sale, and provided that, where one party only confirmed, that confirmation should be binding on both,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

unless objected to at the time of receipt. Plaintiff sent a confirmation to defendant, containing the provision, "Delivery of grain not perfected until grain reaches destination specified and has been inspected and weighed." This confirmation was not objected to, but was returned initialed by defendant. *Held*, that such confirmation governed the rights of the parties, and that, as the carloads destroyed had not reached destination, nor been inspected and weighed, the loss must fall on defendant.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 527; Dec. Dig. ☜ 200(3).]

At Law. Action by the Oklahoma City Mill & Elevator Company against the Pampa Grain Company. On motion by plaintiff for instructed verdict. Motion granted.

Keaton, Wells & Johnston, of Oklahoma City, Okl., for plaintiff.

Kimbrough, Underwood & Jackson, of Amarillo, Tex., for defendant.

MEEK, District Judge. To reach and express a conclusion on the issues before the court is not a pleasant task. No matter what the conclusion, one of the parties, without being guilty of fault or neglect in the premises, will have to suffer a substantial loss.

The evidence shows that one Tom Connally, acting as agent and broker for the Oklahoma City Mill & Elevator Company, purchased from the Pampa Grain Company, at Pampa, Tex., several carloads of wheat; that the contracts covering such purchases were oral; that notice of the purchase of the respective cars was telephoned to the Oklahoma City Mill & Elevator Company, at Oklahoma City; that the Pampa Grain Company, the seller, made invoices of the sales, or shipments, and, having secured bills of lading covering them from the local agent of the Pan Handle & Santa Fé Railroad Company, at Pampa, Tex., inclosed the bills of lading and invoices to the Oklahoma City Mill & Elevator Company, and draft covering the price agreed upon, less the freight on the shipment from Pampa to Galveston, and perhaps in some instances less a certain small margin for expenses. I believe expenses were not mentioned in the oral contract of purchase; they are, however, in the contract of confirmation—leaving a certain margin for differences in grades of the wheat, which differences were to be ascertained at the elevator in the city of Galveston. The bills of lading thus inclosed with the invoices, together with the drafts, revealed that the grain was delivered to the railroad company, consigned to the "order of Pampa Grain Company, destination Galveston, Texas, notify Oklahoma City Mill & Elevator Company, at Galveston, Texas." The indorsement on the bills of lading (one of which I use for illustration) was: "Pampa Grain Company, by A. C. Matthews, Manager." The testimony reveals this indorsement was placed upon the bills of lading before they were forwarded to the Oklahoma City Mill & Elevator Company with drafts attached. Upon receipt of the respective enumerated inclosures the Oklahoma Company honored the draft or drafts presented it, covering the shipments; the amounts called for by the drafts being placed in the bank to the credit of the Pampa Grain Company. Unquestionably these amounts were advanced and placed to the credit of the Pampa Grain Company to liquidate and

pay the obligation of the Oklahoma City Mill & Elevator Company in the purchase of the respective shipments of grain. Had not the great Galveston storm intervened, there would have been no unpleasant future to the transaction.

Immediately upon receipt of the telephonic communication from its agent, Tom Connally, to the effect that a purchase or purchases of grain had been made on oral contract, Oklahoma Company forthwith mailed to the Pampa Grain Company, at Pampa, Tex., a formal instrument, styled "Confirmation of Purchase." The substance of the "confirmation of purchase" incorporates and expresses the "custom of the trade," as such custom has been testified to exist and obtain here before the court. The provisions of the instrument, "confirmation of purchase," are also in accord and conformity with the trade rules adopted by and controlling transactions between the members of the Texas Grain Dealers' Association.

It is in evidence that Oklahoma City Mill & Elevator Company was, at the time of these transactions, a member of the Texas Grain Dealers' Association; also that Pampa Grain Company, the seller of the grain, was a member of that association. The letter heads used by Pampa Grain Company advertised it as "Member Texas Grain Dealers' Association." The rules of that association here relevant and pertinent are the following:

"Rule 1.—*Trade.* It shall be the duty of both buyer and seller to include in their original articles of trade, whether conducted by wire or mail, the following specifications (for exceptions to this rule see rule 2): Number of bushels or cars; kind and grade of grain; price; point of shipment or delivery, or rate point; time of shipment or delivery; route; terms.

"Rule 2.—*Usual Terms.* (a) The specifications of rule 1 shall apply, except in cases where the buyer and seller have been trading on agreed terms and conditions, in which event it shall be sufficient for the words 'usual terms' to be used in the telegram, or even to omit any reference to terms. In such cases it shall be implied that such terms and conditions as governed previous trades of a like character shall obtain.

"(b) *Terms.* The word 'terms' shall mean that the weights and grades of a shipment shall be determined in the market agreed upon, or understood, at time of sale, it being further understood, in addition, that whenever applied to a terminal market the word 'terms' shall be construed to mean that all the rules governing such market shall obtain."

"Rule 4.—*Confirmation.* It shall be the duty of both buyer and seller, on day of trade, to mail each to the other a confirmation in writing (the buyer a confirmation of purchase, and the seller a confirmation of sale), setting forth the specifications as agreed upon in the original articles of trade. Upon receipt of said confirmation the parties thereto shall carefully check all specifications named therein and upon finding any differences shall immediately notify the other party to the contract, by wire, except in case of manifest errors and differences of minor character, in which event, notice by return mail will suffice.

"Rule 5.—*One Confirmation.* Where only one party to a trade confirms, this confirmation shall be binding upon both parties, unless objected to at the time of receipt of same."

So far as the evidence shows, a confirmatory contract, such as is provided by the rules, was forwarded by the purchaser alone. These contracts of confirmation of sale are the only contracts made in reference to these transactions which incorporate the requisites embodied and set forth in rule 4, above quoted.

The invoices which were sent by the Pampa Grain Company to the Oklahoma Company, while incorporating in part, do not incorporate all of the provisions and terms required by the formal confirmation of purchase. In any event a "confirmation of purchase," so designated, was sent by the Oklahoma Company to the Pampa Company, at Pampa, Tex. This was received by the manager of the Pampa Company there, and, after being retained by him for a period of time, the length of which was not definitely stated by the manager while he was on the witness stand, he placed upon this confirmation of purchase in his own handwriting the words, or abbreviations, "Pampa Gr. Co.," and with such indorsement thereon inclosed it in an envelope addressed to the Oklahoma City Mill & Elevator Company, Oklahoma City, and deposited it in the mails for transmission and delivery to that company. The Oklahoma Company produces this instrument on the trial of this case. The Pampa Grain Company, being an advertised member of the Texas Grain Dealers' Association, it seems to me should be held to know the rules of that association, to know the provisions thereof pertaining to the purchase and sale of grain, and should be bound thereby.

Notwithstanding the manager testified that he was not certain as to the contents of these rules, he indorsed the name of "Pampa Grain Company" on this confirmation of purchase, which act is in conformity with the custom and usage obtaining among grain men in making confirmation of purchases when there are no objections, exceptions, or errors to be noted or urged as to the contents of such confirmation. The signing and returning of this confirmation of purchase by the Pampa Grain Company to the Oklahoma Company has the effect of conveying to the mind that Pampa Company found no objection to the provisions of this confirmation of purchase, no manifest errors nor differences of minor character therein. If it had found such errors or differences, it would have been called upon either to wire the Oklahoma Company of such differences, or, in event they were of minor character, to give notice by letter. Instead of giving any such notice, it placed its signature on the contract of confirmation, indicating its acquiescence therein, and then returned it by mail to the purchaser. Rule 5 provides that, where only one party to a trade confirms, this confirmation shall be binding upon both parties, "unless objected to at time of receipt of same." As I have stated, the evidence shows there was no objection.

Among the provisions contained in this contract of confirmation is one reserving the right to change the destination of shipment in transit. It reads:

"We reserve the right to change destination of shipments in transit. Draw on us at Oklahoma City, with shipper's order bill of lading attached, leaving sufficient margin to guarantee weights and grades. Shipper pays weighing, inspection, trackage, and exchange, if any. Delivery of grain not perfected until grain reaches destination specified and has been inspected and weighed."

This provision to my mind is entirely consistent with the form in which the bills of lading were requested by and issued to the shipper. The shipment was consigned to the order of "Pampa Grain Company, destination Galveston." The right reserved to change destination was

not exercised. Now, what was to be done, under this contract, when the shipment reached Galveston? Oklahoma Mill & Elevator Company was to be notified, at Galveston. This was in conformity with the confirmation of purchase, and also in accord with the rules controlling transactions between members of the Texas Grain Dealers' Association.

Whilst the possession of the bill of lading covering a shipment, either indorsed or unindorsed, betokens ownership, general or special, in any event such possession evidences the right in the holder to direct and control the disposition of the shipment (Missouri Pacific Railway Co. v. McFadden, 154 U. S. 155, 14 Sup. Ct. 990, 38 L. Ed. 944), yet the basis of such possession is open to inquiry, and as between the parties to a purchase and sale—as the buyer and seller of the carloads of wheat in the instant case—the custom or course of dealing should control, and, in any event, a specific provision in "confirmation of purchase" as to when delivery of shipment of grain shall be held perfected or completed should control.

Before these carload shipments of wheat had reached destination and been received in the elevator at Galveston, there to be inspected and the grade thereof determined, they were in part totally destroyed and in part substantially damaged by fire and water. "Under a contract of sale which provides for delivery at a specified place, a delivery at such place must be made to fix the liability of the buyer, and it is not sufficient that the goods are ready for delivery at another place near by." 35 Cyc. 171, and authorities there cited. These shipments were purchased for export, and the buyer reserved "the right to unload off grades grain without first notifying you."

As the delivery of the grain in the respective shipments had not been perfected (or completed) at the time the loss and damage overtook them, I am constrained to and will hold that the burden of such loss and damage must fall upon the party contracting to perfect delivery at the point of destination in the manner and for the purposes above set forth.

I will therefore charge the jury to return its verdict in favor of the plaintiff for the amounts which are agreed by the parties to be due in event the court finds the law covering and controlling the issues for the plaintiff.

Mr. Kimbrough: The defendant excepts to the ruling of the court.