BROWN, J., did not sit or take part in the decision of this case.
The complaint alleged, in effect: "That it purchased for value, and is the owner of, certain bills of lading issued by the defendant company, through its local freight office in the city of Raleigh, which were made to the Raleigh Grain and Milling Company and endorsed to the order of plaintiff, on which bills of lading drafts were attached, drawn by said Raleigh Grain and Milling Company on the consignees, payable to plaintiff, which drafts plaintiffs discounted at their face value."
Then follows itemized statement of drafts and bills, giving names of consignees, etc., and aggregating $5,091.30. *Page 442 
"That said drafts were returned `not paid,' with the information that no goods had been received by the consignees, and that plaintiffs is informed and believes that the defendant, the railroad company, did not receive the goods as represented by the bills of lading and no shipments were made on account thereof, and that the Raleigh Grain and Milling Company was totally insolvent."
Defendant demurs because it appears from the complaint that the goods, as represented by the bills of lading attached to the complaint, were not actually received by defendant, and defendant is not bound thereby, although they have been transferred to a bona fide (416) holder for value, and that the copy of the form of bill annexed to complaint contains the notation, "Shipper's load and count," etc.
There was judgment sustaining the demurrer, and plaintiff excepted and appealed.
In Williams, Black Co. v. R. R., 93 N.C. 42, it was held that "A common carrier is not bound by a bill of lading issued by its agent unless the goods be actually received for shipment and the principal is not estopped thereby from showing `by parol that no goods were in fact received, although the bill has been transferred to a bona fide holder for value.'"
This decision, fully approved in the more recent case of Peele v. R. R.,149 N.C. 390, has since been the accepted and unquestioned law of the State and to our minds the ruling is in accord with right reason and sustained by the decided weight of authority in other jurisdictions. Mo. R. R. v.McFaden, 154 U.S. 155; Pollard v. Vinton, 105 U.S. 7; Ray Ray v. NorthernPacific R.R., 6 L.R.A. (N.S.), 302; Baltimore R. R. v. Wilkins, 44 Md. 11;National Bank of Commerce v. R. R., 44 Minn. 224.
The position and the principles upon which it may be properly made to rest are very impressively stated by Mitchell, J., in the Minnesota case,supra, as follows: "The reasoning by which this doctrine is usually supported is that a bill of lading is not negotiable in the sense in which a bill of exchange or promissory note is negotiable, where the purchaser need not look beyond the instrument itself; that so far as it is a receipt for the goods it is susceptible of explanation or contradiction, the same as any other receipt; that the whole question is one of the law of agency; that it is not within the scope of the authority of the shipping *Page 443 
agent of a carrier to issue bills of lading where no property is in fact received for transportation; that the extent of his authority, either real or apparent, is to issue bills of lading for freight actually received; that his real and apparent authority, i.e., the power with which his principal has clothed him in the character in which he is held out to the world . . . is the same, viz., to give bills of lading for goods received for transportation; and that this limitation upon his authority is known to the commercial world, and therefore any person purchasing a bill of lading issued by the agent of a carrier acts at his own risk as respects the existence of the fact (the receipt of the goods) upon which alone the agent has authority to issue the bill, the rule being that if the authority of an agent is known to be open for exercise only in a certain event or upon the happening of a certain contingency, or the (417) performance of a certain condition, the occurrence of the event, or the happening of the contingency, or the performance of the condition must be ascertained by him who would avail himself of the results ensuing from the exercise of the authority. An examination of the authorities also shows that they apply the same principle whether the bill of lading was issued fraudulently and collusively, or merely by mistake."
And further in the opinion, while recognizing the force of the opposing position, going so far as to say that if the question was res integra, it might be allowed to prevail the learned judge gives the practical suggestions in support of the court's decision as follows:
"But, on the other hand, it may be said that carriers are not in the business of issuing and dealing in bills of lading in the same sense in which bankers issue and deal in bills of exchange; that their business is transporting property; and that if the statements in the receipt part of bills of lading issued by any of their numerous station or local agents are to be held conclusive upon them, although false, it would open so wide a door for fraud and collusion that the disastrous consequences to the carrier would far outweigh the inconvenience resulting to the commercial world from the opposite rule. It is also to be admitted that it requires some temerity to attack either the policy or the soundness of a rule which seems to have stood the test of experience, which has been approved by so many eminent courts, and under which the most successful commercial nation in the world has developed and conducted her vast commerce ever since the inception of carriers' bills of lading." Suggestions that to our minds embody the weightier reason.
It is argued for the plaintiff that as a recent Federal statute, chapter 415, Laws 1916, 39 U.S. Stat. at Large, part 1, p. 538, makes these bills of lading negotiable, the question of public policy involved in these *Page 444 
cases and so far as the Federal decisions are concerned, is no longer of weight.
On a cursory examination of the statute in question, there is doubt if the law does or was intended to make bills of lading negotiable in the full sense of the term, that is, to the extent that ordinary commercial paper is so. Nat. Bank v. R. R., supra, and see an interesting article on this subject in Michigan Law Review for April, 1918, p. 402. But if this be conceded, the fact that such a law was deemed necessary to bring about a change and that Congress considered the subject with its attendant results of such perplexity and importance as to require a statute of 45 sections to deal with it adequately and safely, makes rather against the plaintiff's position as to what the law now is, for ours is only the jus dicere and leads to the conclusion also that, if any change is found desirable, it should be by the law-making body, (418) where all the practical suggestions that are presented in such a problem may be fully discussed and determined.
As now advised, we must adhere to our former decision and the judgment for defendant is affirmed.
Affirmed.
Cited: Riff v. R. R., 189 N.C. 588.