A. R. BEATY, Plaintiff in Error, v. N. H. CRUCE,
Defendant in Error.

**Springfield Court of Appeals, June 25, 1918.**

**LIMITATION OF ACTIONS: Accrual of Right of Action: Mistake.**
When the parties to a sale of land are mutually mistaken in be-
lieving that the vendor has title, in the absence of negligence, the
purchaser's cause of action to recover the price paid accrued
when the deed to the vendor was adjudged a forgery.

Error to the Cedar County Circuit Court.—*Hon. Berry
G. Thurman,* Judge.

REVERSED AND REMANDED.

*H. O. Trinkle, J. D. Hill,* and *R. E. Ball* for plain-
tiff in error.

*D. Walker Smith* and *Mann, Todd & Mann,* for
defendant in error.

BRADLEY, J.—Action for money had and re-
ceived. The answer is a general denial and a plea of
the five year Statute of Limitations. Upon trial be-
low before the court without the intervention of a jury,
judgment went for the defendant on the ground that
plaintiff's cause was barred by the five-year statute;
and plaintiff brings the case to this court by writ of
error.

September 15, 1910, plaintiff entered into a contract
with one T. J. Hallam a real estate broker to purchase
a section of land in Kearney county, Kansas, for $2100.
Hallam was indebted to both plaintiff and defendant,
and it was agreed all around between plaintiff, defend-
ant and Hallam that plaintiff was to deduct his debt
against Hallam which amounted to $300, and the bal-
ance, $1800, should be paid through defendant so he

might collect his debt against Hallam which amounted to about $800, and to carry out this agreement, Hallam assigned his contract with plaintiff to defendant. It seems that at the time plaintiff and Hallam entered into the contract whereby plaintiff was to buy the land that there was a deed directly from Hallam to plaintiff put up with the State Bank in Lakin, Kansas, to be delivered to plaintiff when he paid the purchase price less his indebtedness against Hallam. But later Hallam assigned his contract to defendant, and defendant wrote plaintiff to ascertain if plaintiff would agree to honor a sight draft for $1800 with a quit-claim deed from defendant. One Veit Eppstein in fact owned the land, but it does not appear whether plaintiff or defendant knew this at the time.

Plaintiff agreed with defendant to honor his draft for $1800 and to accept a quit-claim deed from defendant on condition that the title showed up good. An abstract was furnished by Hallam and was submitted by plaintiff to his attorney, and the title was pronounced good. October 6, 1916, defendant drew on plaintiff for $1800, enclosing the draft together with a warranty deed purporting to be from Eppstein to defendant, also a quit-claim deed from defendant to plaintiff, and the contract between plaintiff and Hallam, and mailed these to the Lakin State Bank. Defendant enclosed with these deeds, draft, and the Hallam contract an order from Hallam to plaintiff directing him about the disposition of the Hallam deed, and to deduct his $300 debt, and the cost of the abstract. Plaintiff honored the draft as per agreements, and defendant's quit-claim deed, together with the warranty deed purporting to be from Eppstein to defendant were turned over to plaintiff.

The Eppstein deed was a forgery, and was so declared to be by the district court in Kansas on May 5, 1913, in a suit by Eppstein against plaintiff and defendant. October 17, 1914, plaintiff filed suit in Cedar county, Missouri, against defendant to recover the

amount paid on the $1800 draft. This suit was founded upon alleged fraud and deceit. In that case plaintiff suffered a nonsuit, so it is stated, on June 7, 1915. On December 3, 1915, plaintiff filed the cause now here as for money had and received.

Plaintiff paid defendant's draft about October 6, 1910, and filed his first cause October 17, 1914. There is no question about the first suit having been filed in time, but defendant contends that the cause now here commenced December 3, 1915, is barred. To meet this challenge plaintiff contends: (1) That defendant's plea of the Statute of Limitations must fail for the reason that the present cause was brought on the same cause of action within one year after a nonsuit in the first case, and is saved by section 1900, Revised Statutes 1909; (2) that the defendant was absent from the State after his cause of action accrued for a sufficient time to more than cover the excess of five years between October 6, 1910, and December 3, 1915, and that here he is saved by section 1897, Revised Statutes 1909; (3) that there were facts constituting fraud sufficiently shown to arrest the statute until plaintiff's discovery of the fraud; (4) that his cause of action did not in fact accrue until May 5, 1913, when the warranty deed purporting to be from Eppstein to defendant was finally adjudged to be a forgery.

As to the first of these contentions defendant says that the cause now here is not the same cause of action as contemplated in section 1900, Revised Statutes 1909, and that if it is, that plaintiff failed to introduce the records of the former suit showing that a nonsuit was taken, or when it was taken, and that we cannot take a mere *statement* in plaintiff's brief for record, especially after defendant has challenged as a *fact* the accuracy of the statement. As to the second contention defendant says that the record shows no absence from the state by defendant as contemplated in section 1887, Revised Statutes 1909. As to the third contention defendant says that plaintiff pleaded no fraud, but

bottomed his cause as for money had and received, and without an allegation of fraud such question cannot be raised. To the fourth and last contention defendant says that if plaintiff has any cause of action that it *accrued* on October 6, 1910, when plaintiff paid defendant for the land, and not when the deed was adjudged a forgery on May 5, 1913.

We are of the opinion that plaintiff's cause of action did not accrue until the warranty deed from Eppstein to defendant was adjudged to be a forgery, and hence it is not necessary to discuss other questions. Both plaintiff and defendant were apparently the victims of the machinations of Hallam, and plaintiff contested Eppstein's suit to cancel the forged deed thus showing his good faith. After the cancellation of the forged deed plaintiff bought the land direct from Eppstein paying $2500 therefor. Defendant was served by publication in the Eppstein case under the laws of Kansas, but gave his deposition therein showing his good faith and actual knowledge of that suit. Plaintiff enclosed the deed from Eppstein to him along with his quit-claim deed, and these transfers together with the abstract showed a good title. Plaintiff reserved his $300 debt by direction of defendant and Hallman, and paid the balance to defendant. Plaintiff stands in the same position he would be in had he paid the full consideration direct to defendant. Plaintiff on the one hand in good faith paid to defendant $1800 in consideration of getting *title*, and on the other hand defendant in good faith understood to convey *title* for such consideration, both ignorant of the fact that a forgery had been committed. Plaintiff paid the consideration with the intention of procuring the fee to the land, and defendant intended to convey the fee. To say otherwise would be to convict the defendant of bad faith and gross fraud. [Picotte v. Mills, decided by this court on the 11th day of March, 1918, and not yet reported.]

Ordinarily it is the *uncertainty* of the grantor's interest that is the consideration if a quit-claim deed,

but not so here.  Defendant was in no way remotely connected with the chain of title, and no uncertainty of title entered into the consideration.  This is not a cause for a breach of covenant so as to bring it within the rule where the cause of action accrues technically and substantially at the time of the execution of the deed where no possession is delivered, and that the statute then commences to run; and not when the covenantee is ousted by the holder of a superior title as in Frank v. Organ, 167 Mo. App. 493, 151 S. W. 504, and other cases there cited but this cause is essentially based on a mutual mistake of a concealed fact, and the statute did not commence to run until the non-existence of that fact was ascertained, provided plaintiff was not guilty of negligence in discovering or ascertaining such fact; but there is here no question of the latter character.  [Bent v. Priest, 86 Mo. 475; Bank v. Thayer, 184 Mo. 61, 82 S. W. 142; Scott & Bowker v. Boswell, 136 Mo. App. 601; 118 S. W. 521.]  These cases deal with concealed facts constituting a fraud, but by analogy they are applicable here.  While defendant did not participate in the forgery he stepped into Hallam's shoes and completed a transaction by which he profited, and the result of which was a gross fraud upon plaintiff, and to hold that limitations began to run from the date of the payment of the draft would be opening a door through which many not over scrupulous could escape with the property of another for which they had given nothing.  No court should hesitate, however, to enforce the bar of the Statute of Limitations independent of hardships on the one hand or unmerited gain on the other.  The object of limitation statutes is to prevent fraudulent and stale claims from springing up after the lapse of years, and after memory has become obscure, witnesses dead or gone, and after vouchers have been lost or destroyed, (25 Cyc. 983), and such statutes perform a most useful office tending much to the stability and certainty of business transactions.  1 Wood on Limitations (4 Ed.), section 122a says: "Statutes of Limitation commence to run against

a cause of action from the time it accrues, or from the time when the holder thereof has the right to apply to the court for relief, and to commence proceedings to enforce his rights. The time when a cause of action has accrued within the Statutes of Limitations means the time when plaintiff first became entitled to sue. The question when a cause of action accrues is a judicial one, and to determine it in any particular case is to establish a general rule of law for a class of cases, which rule must be founded on reason and justice."

In an early Texas case (Ripley v. Withee, 27 Tex. 14) it was held that an action for damages arising from the sale of a forged land warrant did not accrue until the certificate had been presented to the court of claims and rejected because of the forgery. We know of no precedent in this State or any other that would justify or support us, under the state of facts shown here, in holding that plaintiff's cause of action accrued when he paid defendant's draft, and that limitation began to run from that date. Plaintiff could do nothing to discover the fraud, and defendant could do nothing to conceal it, as neither knew anything about it, and when Eppstein sued to cancel alleging the forgery plaintiff resisted, and defendant gave his deposition presumably on behalf of plaintiff, Beatty. The Eppstein deed was declared to be a forgery, and the theretofore hidden secret was completely disclosed, and plaintiff's right to sue then accrued and limitations then commenced to run.

The judgment is reversed, and cause remanded. *Sturgis, P. J.,* and *Farrington, J.,* concur.