## PIONEER TRUST COMPANY, Appellant, v. MISSOURI PACIFIC RAILROAD CO., Respondent.

### Kansas City Court of Appeals, June 26, 1920.

1. **BILL OF LADING**: Carrier's Authority to Issue: Rights of Transferee. Since the transfer of a bill of lading, covering an interstate shipment, by endorsement and delivery operates only as a transfer of whatever title the transferrer had, bills of lading issued by carriers, having no authority to issue them for the reason that the goods had not been actually received for transportation, are void in the hands of a subsequent transferee.

2. ————: Draft Attached: Distinct Obligation. Defendant carrier issued bill of lading, consigned to shipper's order at Atlanta with instructions to notify S. at that place. This bill was endorsed to plaintiff by the shipper who drew a draft on S. which it sold to plaintiff. Subsequently the shipper procured from another carrier a bill of lading covering the same car but consigned to shippers order at Providence with instructions to notify L. & W. there. A draft was drawn on L. & W. which was sold to plaintiff and the second bill of lading endorsed to it, the plaintiff having no knowledge that the second bill of lading covered the same car. L. & W. received the car and paid the draft. In an action by the plaintiff on the first bill of lading issued by defendant for failure to deliver the car at Atlanta. *Held*, that it was proper to deduct the amount paid by L. & W. on the draft, secured by the second bill of lading as L. & W. paid this solely because the car was delivered to them and the plaintiff having received some value for the contents of the car covered by the bill of lading issued by the defendant should credit defendant therewith.

3. **TRIAL PRACTICE**: Stipulation: New Trial. A stipulation as to the amount of judgment to be entered in case of a finding for the plaintiff is binding only at the first trial, and cannot be taken advantage of on a second trial.

204 M. A.—19

Appeal from Jackson Circuit Court.—*Hon. Thos. J. Seehorn*, Judge.

AFFIRMED.

*Scarritt, Jones, Seddon & North* for appellant.

*J. M. Souby* for respondent.

BLAND, J.—This is an action in four counts, each on a different bill of lading issued by the defendant covering a car load of baled hay. It is alleged that defendant failed to deliver the hay in accordance with the terms of the bills of lading. There were two trials below, both by the court, juries being waived. The first trial resulted in a judgment for defendant, the second in a judgment in favor of plaintiff but for a sum much less than was prayed for. Plaintiff has appealed.

The facts, which were stipulated, show that on September 2, 1916, defendant received from the Southwestern Hay & Grain Co., of Kansas City, Missouri, a car load of baled hay for shipment and issued to it a bill of lading of that date (being the one sued on in the first count), showing a consignment to the order of the shipper at Atlanta, Georgia, with instructions to notify the Southern Flour & Grain Company at the latter point. On the same day the Southwestern Hay & Grain Company endorsed the bill of lading to the Tri-State Hay & Grain Company. These two concerns were partnerships, the latter composed of three members, two of which composed the membership of the former, and the two concerns appear to be practically the same. The Tri-State Hay & Grain Company drew its draft for $137.34 in favor of plaintiff on the party designated in the bill of lading to be notified, and on September 6, 1916, deposited the same with the plaintiff bank with the bill of lading attached thereto. On that day the Tri-State Hay & Grain Company sold and delivered to plaintiff the said draft with said bill of lading attached

thereto and paid therefor the sum of $137.34. Plaintiff thereupon forwarded said draft and bill of lading attached thereto in due course to Atlanta, Ga., for collection and delivery, and the same was held there, awaiting the arrival of said car, for more than thirty days. Said draft was not and has not been paid, payment therefor having been refused by the payers. Said bill of lading was not delivered and said car never arrived at that destination but was diverted and delivered elsewhere. Said draft and bill of lading have been held by plaintiff from the time of its acquisition by plaintiff until the present. The drawers of said draft are insolvent.

On September 14, 1916, the Southwestern Hay & Grain Company induced the commercial agent of the Nashville, Chattanooga & St. Louis Railroad Company, at Kansas City, Missouri, to issue a bill of lading of that date, acknowledging receipt on that date at Kansas City, Missouri, of the same car of hay that had been shipped under the original bill of lading. This second bill of lading is what is ordinarily known as an exchange bill of lading and it diverted the shipment to Chapel Hill, N. C., with a different party to be notified than the one specified in the original bill of lading. The exchange bill of lading was issued without the knowledge or consent of plaintiff and on a mere promise in writing made by the agent of the Southwestern Hay & Grain Company to surrender the original bill of lading as soon as the return thereof could be secured. At that time the original bill of lading was in the hands of plaintiff. This second bill of lading was handled by the Southwestern Hay & Grain Company and the Tri-State Hay & Grain Company and plaintiff bank in precisely the same manner as the preceding one, the amount of the draft involved in this instance being $157.90. Plaintiff when it took the second bill of lading with draft attached had no actual knowledge or notice of the fact that the same car load of hay was intended to be covered by each of the bills of lading. The second draft was not

paid, leaving plaintiff in possession of the second bill of lading on which suit has been brought in another case, resulting in a judgment for defendant, and which has been appealed to this court. [See Pioneer Trust Company v. Nashville, C. & St. L. Rd. Co., decided at this sitting but not yet reported.]

On September 30, 1916, while both of the foregoing bills of lading were in the possession of plaintiff, the Southwestern Hay & Grain Company, without plaintiff's knowledge or consent, induced the commercial agent of the Southern Railroad Company, at Kansas City, Missouri, to issue another exchange bill of lading, or a third bill, on the same shipment, diverting it to Providence, R. I. This third bill of lading was issued by the agent on a written request of the Southwestern Hay & Grain Company, containing a similar promise as that stated in connection with the preceding one, and also on the strength of what purports to be a bond executed by the Southwestern Hay & Grain Company as principal and the Tri-State Hay & Grain Company as surety. This third bill of lading was handled by the two companies mentioned and by the plaintiff in identically the same manner in which they dealt with the two preceding ones, plaintiff having no actual knowledge or notice of the fact that the same car load of hay was intended to be covered by each of the bills of lading. The draft in this last instance was for $124.73, which was paid by the persons to be notified, Lord & Webster, at Providence, R. I. Plaintiff received and retained the money for this draft.

The facts in regard to the fourth count are similar to those stated with respect to count one. It was stipulated that if judgment should be in favor of plaintiff on the first count that it should be in favor of plaintiff on the fourth count for $165.06, with interest, and if judgment went for defendant on the first count, it should go for it on the fourth. Counts two and three are based upon facts similar to those stated in count one with certain exceptions, the main one being that there was

only one diversion instead of two, of the cars embraced in these two counts. It was stipulated that should judgment be for plaintiff on the second and third counts it should be for a stated sum on each of said counts. The foregoing are the main facts of the case, some other facts will be mentioned in the course of the opinion.

It is agreed that the bills of lading sued on cover interstate shipments and that the principles of the federal law are to be applied in construing such bills and in determining the liability of the defendant arising thereon. Under the federal decisions the transfer of a bill of lading by endorsement and delivery operates only as a transfer of whatever title the transferrer may have to the goods covered thereby. [Pollard v. Vinton, 105 U. S. 7; Friedlander v. Tex. & Pac. Ry. Co., 130 U. S. 416; Mo. Pac. Ry. Co. v. McFadden, 154 U. S. 155.] The agents of the two carriers that issued the second and third bills of lading had no authority to issue the same for the reason that the goods had not been actually received for transportation and said bills of lading were void even in the hands of plaintiff. [Pollard v. Vinton, supra; Friedlander v. Tex. & Pac. Ry. Co., supra; Mo. Pac. Ry. Co. v. McFadden, supra; Smith v. Mo. Pac. Ry. Co., 74 Mo. App. 48, 51.] It is immaterial whether the hay was in the possession of the Nashville, Chattanooga & St. Louis Railroad at the time the second bill of lading was issued or came into its possession later (and the same is true as to the Southern Railroad) for the reason that such possession when these two carriers obtained the same was not by virtue of any delivery of the hay to such carrier to meet the bills of lading improperly issued to the Southwestern Hay & Grain Company, for that company had no control over the hay at that time and could make no delivery thereof to the carrier. The goods came into the possession of these carriers (which were connecting carriers of defendant) in connection with the execution of the original genuine bill of lading issued by this defendant. [The "Idaho," 93 U. S. 575, 582; Smith v. Mo. Pac. Ry. Co., supra,

l. c. 56.] It is therefore apparent that the second and third bills of lading were absolutely void and of no effect in plaintiff's hands.

The court rendered judgment for plaintiff for the difference between the amounts plaintiff collected, from Lord & Webster at Providence, R. I., and the value of the hay at Atlanta, Georgia, the place where defendant and its connecting carriers were obligated to deliver under the original bill of lading.

Plaintiff contends that the draft upon Lord & Webster at Providence, R. I., "was a complete, legal obligation of itself when acquired by the plaintiff and that obligation was a separate and distinct obligation from that embodied in the purported bill of lading attached thereto as collateral security. And the plaintiff had the right to enforce its rights upon the draft independently of its rights, if any, founded upon the purported collateral security," and that it had, such right "whether the collateral security was good or bad, whether it was legal or fraudulent, and it had the right concurrently and separately to enforce its rights, if any it had, upon its collateral;" that the money it got from Lord & Webster was in payment of the draft and "not by selling them hay." For the purposes of this case we assume that plaintiff had neither actual nor constructive notice of the fact that the second and third bills of lading were issued for the same shipment as the first, and for that reason, not having any knowledge that the car of hay delivered to Providence, R. I., was the same car of hay that was covered by the first bill of lading, defendant waived nothing in accepting, if it did accept, the car of hay covered by the original bill of lading at Providence, R. I. However, plaintiff is not entitled to recover from the defendant any greater damages than it actually sustained by reason of the failure of defendant and its connecting carriers (the defendant being liable for the neglect of the latter under the Carmack Amendment) to deliver the car at Atlanta, Georgia.

No doubt plaintiff had the right to enforce its rights on the draft separate from the collateral, but was plain-

tiff doing that in this case? We think not. When plaintiff sent the draft with the third bill of lading attached thereto to Providence, R. I., for collection from Lord & Webster, it was thereby making an effort to realize on the bill of lading which stood in the place of the hay and which was pledged to secure the draft. Lord & Webster were buying the hay. They were not interested in the draft any further than it was necessary for them to take up the draft in order to get the hay. What plaintiff was really doing was selling the pledged property to Lord & Webster in order to realize upon the indebtedness, that is, the draft. When Lord & Webster bought the hay or the pledge which secured the draft, the money realized from said hay was paid upon the draft, and that amount being sufficient to meet the draft, the draft was discharged. It is immaterial, whether the bill of lading was void as between plaintiff, the shipper, and the railroad company. In this case it acted as a transfer of the hay and this hay was the hay of plaintiff. Plaintiff may not have known that the hay was the identical hay that was covered by the first bill of lading at the time, but it received some value for the hay covered by the bill of lading upon which this suit is founded and it ought not to be permitted to recover a second time for the amount realized. What plaintiff is really attempting to do is to recoup its loss covered by the void bills of lading and for which defendant and its connecting carriers are not liable upon any theory. [See Pioneer Trust Company v. Nashville, Chattanooga & St. Louis Rd. Co., decided at this sitting but not yet reported.] Plaintiff, unfortunately, having sustained a loss by reason of the execution of the second and third bills of lading, cannot recoup said loss except from the parties conveying to it the fraudulent bills of lading, or by getting hold of the thing out of which it was swindled, that is, the money they paid for these bills of lading. The fact of the matter is, that plaintiff actually received the hay involved in the bill of lading upon which this suit is based. Its recovery upon the draft

and bill of lading that it sent to Providence, R. I., is attributable or referable to the original bill of lading on which this suit is based, for the reason that without the latter bill of lading there would have been no recovery of the money from Lord & Webster at Providence, R. I., as there would have been no hay at Providence for Lord & Webster to purchase.

At the trial which was had upon a stipulation of facts that was used, in part at least, at the second trial, the court entered judgment for defendant on all four counts of the petition. Plaintiff in due time filed a motion for a new trial which was overruled. Subsequently, however, the court of its own motion set aside its order in this regard and granted a new trial. At the second trial plaintiff contended that the stipulation was binding upon the parties in respect to the amount of the judgment to be rendered in favor of plaintiff on each count, if recovery was had, and defendant contended to the contrary. The stipulation provided—

"This stipulation shall in no wise be construed or held to have the effect of giving the consent of either party to any finding and judgment that may be entered in the case, but on the contrary either party has the right to move for a new trial and to prosecute an appeal as though the case were heard and determined upon evidence establishing the facts herein recited."

It is apparent from the part of the stipulation quoted that the stipulation was evidential in character and that the parties in making the same contemplated only one trial from which there might be an appeal. The stipulation is not binding upon the parties except as to the first trial. There was no presumption that there was to be a second trial. [Burnham v. North Chicago St. Ry. Co., 88 Fed. 627, 629, par. 2.]

The judgment is affirmed. All concur.