## MISSOURI PACIFIC RAILROAD COMPANY, Appellant, v. THE ASKEW SADDLERY COMPANY, Respondent.*

**In the Kansas City Court of Appeals, December 3, 1923.**

1. **MUTUAL MISTAKE: Where Carrier Paid Money under Mutual Mistake of Fact, Held to Have Made Prima-facie Case for Recovery Thereof.** Where money was paid by a carrier to a shipper in settlement of a claim for supposed loss of goods, under mutual mistake of fact, *held* under the pleading and evidence, carrier made out a prima-facie case for recovery thereof.

2. ————: **Payment Held to Have Been Made Through Mistake of Fact and Not of Law.** Where, at time carrier paid money in settlement of a claim for supposed loss of goods in shipment, it had data from which it could get the correct information as to shipment, and through negligence failed to do so, but at time of settlement and payment was without actual knowledge of true situation, *held* money was paid under mistake of fact and not of law.

3. **INTERSTATE COMMERCE: Statutes Held not Applicable to Interstate Shipment.** Under sections 13455 and 13462, Revised Statutes 1919, making carriers liable to shipper for issuance of original

bill of lading without actual receipt of goods, *held* not applicable to interstate shipment.

4. FRAUD: Principal and Agent: Federal Statute Held not Intended to Permit Shipper to Take Advantage of Fraud of Its Agent in Procuring a Fraudulent or Void Bill of Lading. Laws of United States. section 8604 k k (U. S. Comp. St. of 1918, p. 1375), providing that if a bill of lading had been issued by a carrier, without actual receipt of goods, it shall be liable to owner of goods or holder of an order bill, who has given value in good faith, for damages caused by the non-receipt of goods, *held* not intended to permit shipper to take advantage of fraud of its agent in procuring a fraudulent or void bill of lading.

5. ESTOPPEL: In a Suit by Carrier to Recover Money Negligently Paid Shipper under Mistake of Fact, the Maxim that "Where One of Two Innocent Parties Must Suffer," etc., Held not Applicable. Where bill of lading was obtained by shipper's agent, through fraud, when goods were delivered to transfer company for delivery to a carrier, company was to obtain a bill of lading and return it to shipper the transfer company, in procuring, by fraud, the bill of lading without actual delivery of the goods, acted within the scope of its authority, and in an action by carrier to recover back money paid shipper in settlement for supposed loss of goods in shipment, the maxim that "where one of two innocent parties must suffer, he through whose agency the loss occurred must stand it," *held* not applicable even though carrier negligently paid the money in settlement of the claim.

6. PRINCIPAL AND AGENT: Scope of Authority: In Procuring Bill of Lading, Transfer Company Held to Have Acted in Scope of Its Employment. Where goods were delivered by shipper to transfer company for delivery to carrier and to obtain therefor a bill of lading for return to shipper, *held* the authority of transfer company extended to any act that was necessary to accomplish such purpose and in procuring the bill of lading without delivery of goods, transfer company acted within scope of its employment.

7. ESTOPPEL: In Action by Carrier for Return of Money Paid under Mistake of Fact, Held That There Had Been no Change of Circumstances, That the Recovery Thereof from Shipper Would Prejudice It. Where transfer company engaged by shipper to deliver goods to carrier for shipment, procured a bill of lading therefor without delivering the same, but took the goods back to its warehouse, in an action by carrier to recover money paid in settlement of shipper's claim for supposed loss thereof, in absence of evidence that transfer company was insolvent, or had refused to settle with shipper for his breach of trust, or that carrier had done anything to

prejudice shipper's claim against transfer company for its fraudulent acts, there was no change of circumstances that recovery from shipper would prejudice it.

8. ————: Carrier Held not Estopped from Denying Receipt of Goods Nor from Claiming That There was a Mistake with Reference Thereto. In an action by carrier to recover money paid shipper in settlement of claim for supposed loss of goods, which carrier by mistake believed had been previously delivered to it and lost, where it was shown that agents of carrier erroneously made report to shipper that it had received goods in good faith and without knowledge of the situation, *held* carrier was not estopped to deny actual receipt of goods, nor from claiming that there was a mistake.

9. ————: Notice: Before There Can be an Estoppel There Must be Knowledge of Facts by Party Claiming to Have Been Estopped Thereby. In order that there be an estoppel, there must be knowledge of the facts by one claiming to have been estopped.

---

*Headnote v. Payment, 30 Cyc, p. 1325; 2. Payment, 30 Cyc, p. 1313; 3. Commerce, 12 C. J., Section 112; 4. Carriers, 10 C. J., Section 256; 5. Estoppel, 21 C. J., Section 176; 6. Carriers, 10 C. J., Section 256; 7. Estoppel, 21 C. J.; Section 134; 8. Estoppel, 21 C. J., Section 128; 9. Estoppel, 21 C. J., Section 126.

Appeal from Circuit Court of Jackson County.—*Hon. Thos. B. Buckner,* Judge.

REVERSED AND REMANDED.

*Hackney & Welch* for appellant.

*Watson, Gage & Ess* for respondent.

BLAND, J.—This is an action to recover back, on the ground of mutual mistake, the sum of $581.85 paid to the defendant by plaintiff in settlement of a claim for a supposed loss of goods in shipment. At the close of plaintiff's case the court sustained defendant's demurrer to the evidence and plaintiff has appealed.

The petition is in two counts; the first count alleges that on August 20, 1920, defendant prepared for shipment to a Mrs. Knauber, at Wilsey, Kansas, three packages of saddlery and one of collars; that defendant employed the Kansas City Transfer Company as its agent

to transport said shipment from its place of business
to plaintiff's freight station in Kansas City, Missouri,
and there to deliver said goods to plaintiff for ship-
ment over plaintiff's railroad to Wilsey; that on said
date said transfer company without delivering said
goods to plaintiff fraudulently obtained a receipt from
plaintiff's agent indicating that said goods had been de-
livered to plaintiff for shipment when in truth and in
fact none of said goods had been so delivered; that the
transfer company thereafter delivered said receipt to
defendant and that defendant afterwards made claim for
loss of the goods and presented the receipt so fraudu-
lently obtained to plaintiff's agent as evidence of the
receipt of the goods by plaintiff's agent; that other em-
ployees of plaintiff having to deal with shipments of
freight of the character did, on the faith of the receipt
so fraudulently obtained, make other records indicating
that said shipment had been received when in truth and
in fact it was not received; that on the presentation of
the claim by the defendant to plaintiff, plaintiff was mis-
led by said receipt and claim of the defendant into be-
lieving that said shipment had been received by plain-
tiff and lost in transit, and plaintiff was thereby induced
and did pay the reasonable value of said shipment, to-
wit, the sum of $581.85.

Plaintiff further alleges that while defendant was
chargeable with notice of the fraudulent character of
said receipt, it having been obtained by defendant's agent,
yet the officers of the defendant who made claim against
the plaintiff for said goods were in fact in ignorance of
the fraudulent character of the receipt; that said officers
in presenting said claim to the plaintiff and in receiv-
ing payment therefor, and also the agents of plaintiff
who allowed and paid said claim, acted upon a mutual
mistake of fact, believing that said goods had been re-
ceived by plaintiff for shipment and lost in transit; that
since it paid the claim plaintiff had discovered that no
part of the goods had ever been delivered to plaintiff
for the shipment and that the receipt therefor was fraud-

ulently procured. The petition alleges that plaintiff had demanded of defendant the repayment of said sum of money, which was refused. The second count of the petition is for money had and received.

On the trial it was admitted that on June 14, 1921, plaintiff paid defendant the sum of $581.85 to cover the claim made by defendant to plaintiff; that the transfer company was employed by the defendant "specially with especial authority only to receive packages at the plant of the company at Kansas City and transfer them by truck to the depots of various railroad companies at Kansas City, and to return the bill of lading the next business day." It was further admitted that the transfer company was in the business of hauling for many industrial concerns of Kansas City and that it was in the business of doing such hauling at the time of the trial. Defendant admitted that it prepared a bill of lading on an interstate commerce form and a duplicate or receipt to be signed by the railroad company on the actual receipt of the goods; that the transfer company was paid by the defendant for the special services rendered; and that defendant delivered said bill of lading and receipt, which was subsequently a duplicate of the bill of lading, and the goods in question to the transfer company for transportation to plaintiff's depot for delivery to plaintiff, and procured a signed bill of lading for the shipment on the delivery. It was admitted that the transfer company delivered the original bill of lading to the defendant in the regular course of business on the day following the shipment.

Plaintiff showed by the assistant dock foreman of the transfer company at the time of this transaction that the shipment went to plaintiff's freight station and that plaintiff's clerk checked it and found one box short and told the drayman to take it back, which was done. When it was returned to the transfer company's dock the witness hunted up the missing box and found it had gone on another and the wrong wagon or truck to another

freight depot. The dock foreman told the witness to put the shipment upstairs and hold it for further order, which he did. Afterwards the dock foreman told the witness "to put it up in front, there is a clear receipt on it, and hold it until further orders from Mr. Hinshaw." Hinshaw was the owner of the transfer company. The witness further testified that Hinshaw said, "Put it in storage and hold it until we see what will come up about it." He testified that he then put it up in storage on the second floor of the warehouse and that Hinshaw afterwards sold one of the saddles to someone at the stock yards in Kansas City, and shipped another to his son at Percival, Kansas, and shipped the package of collars to Plevna, Kansas. No part of the shipment was ever again taken to plaintiff's freight office for shipment to Mrs. Knauber. The witness further testified that about this time the transfer company was keeping other freight shipments after getting receipts from railroad offices in Kansas City for them.

At the time in question plaintiff had in vogue the following method of receiving and billing freight at its freight office: The driver of the truck or load upon arriving with his load of freight to be shipped took his bills to what was termed the block clerk and handed them inside to him; the block clerk separated these bills and took the shipping order portion, which was the portion that the railroad retained, and placed it on top and pinned the bills together and put upon them the block number, which designated the place at which the car was standing in which the goods were to be loaded. In this instance the block number was 108 and the car ART 10378. After getting the block number the driver would then take his wagon or truck to the door that had been designated and hand the bills to the receiving clerk; the receiving clerk would check the articles separately, using an individual check mark for each item placed in front thereof on the bill of lading and shipping order. It was the duty of the checking clerk to carry the bills back but if he was too busy he might send them back by the driver

or a messenger boy to the block office for the receiving stamp to be applied. The block clerk then detached the shipping order but had nothing to do with counting the goods or checking them as he did not see them. The shipping order then went to the regular freight office.

There is an inference from the testimony that the bills involved in this case were issued by reason of the fraudulent conduct of the driver of the transfer truck or wagon in manipulating them. The checking clerk testified, when asked as to why he signed the bill of lading without receiving the goods, that, "This billing—it was put underneath another lot, is the receipt to another lot."

Mrs. Knauber notified defendant that she had not received the shipment and by letters of September 7, 16 and 23rd the defendant wrote plaintiff informing it that the shipment had not been received at destination, and asked plaintiff to trace the shipment at once; that the plaintiff was unable to locate the shipment and advised defendant at that time that it made claim for the loss. Defendant on September 23, 1920, mailed to plaintiff a copy of the bill of lading. On September 27, 1920, plaintiff's agent advised its agent at Wilsey, Kansas, that waybill No. 64286 was issued, dated August 20, 1920, covering this shipment, consigned to Mrs. Knauber, and that the shipment was loaded in car "ART 10378." On the same day, September 27, 1920, plaintiff notified defendant that the shipment was received at Kansas City August 20, 1920, and was shipped under Kansas way-bill No. 64286 in car ART 10378. Defendant heard nothing further from plaintiff until January 12, 1921, when a check in the sum of $581.85 in favor of defendant was received from plaintiff. This check was cashed in due course and nothing more was heard by defendant from plaintiff until the 14th day of May, 1921, when defendant received a letter from plaintiff's attorney advising defendant that the goods had not been actually received by the plaintiff and demanding a refund of the money paid in the settlement.

The evidence shows that after the receipt of the claim an investigation was made by plaintiff's agents and they concluded that the goods had been received and lost in transit. Of course an examination of the shipping order or the copy of the bill of lading sent plaintiff by defendant would have disclosed that the goods had not been received because the articles had not been checked upon them. However, plaintiff's evidence attempted to excuse this oversight on the ground that there were a great number of shipping orders and they were bound in large volumes; that plaintiff's employees would go to the shipping order books to ascertain what was the shipping order or way-bill and block number; that it was their custom, unless some suspicious circumstance appeared upon the face of the shipping order to cause them to suspect that something extraordinary had happened, not to make a very careful examination of the body of the shipping order; that the bill of lading being in the possession of the shipper, which indicated that the goods had been delivered, they made no further examination of the shipping order. After the investigation the claim in question was "O. K'd" and referred to the St. Louis office of plaintiff as a proper claim for payment. However, after the settlement was made, plaintiff, noticing in the newspapers that the Kansas City Transfer Company had been guilty of irregularities, immediately made a further investigation and examination of the shipping orders, resulting in the disclosure that there were no check marks indicating the receipt of the goods. There is no contention by the defendant that there was any evidence showing to the contrary that the goods were actually shipped to the consignee, but defendant urges that plaintiff is not entitled to recover under the testimony.

We think the court erred in sustaining the demurrer to the evidence. There seems to us to be no question but there was a mutual mistake of fact in making the settlement. It was mutually supposed that the goods had been delivered to plaintiff when they had not been in fact. Plaintiff, under the pleading and evidence, made

out a prima-facie case. [Bone v. Friday, 180 Mo. App. 577; Picotte v. Mills, 200 Mo. App. 127; Beaty v. Cruce, 204 S. W. 553; Hemphill v. Ins. Co., 243 S. W. 1040; Nordyke & Marmon Co. v. Kehlor, 155 Mo. 643; Koontz v. Bank, 51 Mo. 275.] However, many reasons are assigned by defendant to support its contention that no case was made. We will take them up in the order they appear in defendant's brief.

It is claimed that the evidence shows that the money was paid by plaintiff under a mistake of law. This is based upon the argument that approximately four months before the money was paid defendant made a claim for the loss of the goods and enclosed in the letter a copy of the original bill of lading; that the bill of lading showed on its face, to one familiar with the business methods of plaintiff at its freight station, that the goods had not been actually received (of course, there is no evidence that defendant was familiar with the checking methods of plaintiff); that the bill of lading and the shipping order were in possession of plaintiff during this time; that the plaintiff is bound by its records and information in its possession and that the only conclusion to be drawn is that plaintiff mistook its legal rights and paid the money under a misapprehension of law rather than through a mistake of fact. Of course, there is no merit in this contention. The evidence set forth, supra, shows that while plaintiff had data from which it could get the correct information through negligence it failed to do so, but that it was without actual knowledge of the true situation at the time the settlement was made and the money paid. No question of constructive knowledge is involved.

It is claimed that under the laws of Missouri, sections 13455 and 13462, Revised Statutes 1919, plaintiff was liable to the defendant for the issuance of the original bill of lading without the actual receipt of the goods. Why this fact, if true, would justify the court in sustaining the demurrer is not explained, but we assume it is defendant's contention that it is entitled to retain the

money even if there were a mistake of fact. However, this was an interstate shipment and the statutes cited have no application. [Pioneer Trust Co. v. Mo. Pac. Rd. Co., 224 S. W. 106.] But defendant says that under the laws of the United States, sec. 8604k k (U. S. Compiled Statutes of 1918, p. 1375) plaintiff was liable to the defendant on account of the issuance of the original bill of lading without the actual receipt of the goods. This provides that if a bill of lading had been issued by a carrier under circumstances similar to those present here, the carrier shall be liable—

". . . to (a) the owner of goods covered by a straight bill subject to existing right of stoppage *in transitu* or (b) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, for damages caused by the non-receipt by the carrier of all or part of the goods or their failure to correspond with the description thereof in the bill at the time of its issue.''

This statute was evidently passed to meet the decision of the United States Supreme Court in Pollard v. Vinton, 105 U. S. 7, and Mo. Pac. Ry. Co. v. McFadden, 154 U. S. 155, and other cases (See Pioneer Trust Co. v. Mo. Pac. Rd. Co., supra, l. c. 107), which held to the effect that a bill of lading issued without the receipt of the goods were void even in the hands of an innocent purchaser for value. In order for the defendant to take advantage of this statute, it would have to show that it was the owner of the goods instead of Mrs. Knauber, the consignee. There is no evidence of this fact. However, we do not think that this statute was intended to permit the shipper to take advantage of the fraud of its agent in procuring a fraudulent or void bill of lading. If we correctly construe the statute, the bill of lading in this case was void in the hands of the defendant. [Pioneer Trust Co. v. Mo. Pac. Ry. Co., supra, and cases therein cited.]

Plaintiff next cites us to the familiar maxim that "Where one of two innocent parties must suffer, he

through whose agency the loss occurred must stand it.''
[See Roumeloitis v. Railroad, 183 Mo. App. 139.] In
this connection it is contended by the defendant that
plaintiff was negligent in making the settlement without
a close examination of its files and the bill of lading; that
Hinshaw, owner of the transfer company, intended to
hold the shipment at his warehouse for a sufficient length
of time to determine whether or not there would be any
complaint of the shortage and that it was only after
he found that no complaint was made that he disposed
of the goods; that defendant had no information avail-
able that the shipment had not been received but, on the
contrary, had a clear receipt or bill of lading for the
shipment, and that plaintiff wrote it on September 23rd
that the goods had been received. Therefore, defend-
ant contends that it was lulled into a sense of security
and made no investigation; that if it had made an in-
vestigation, it would have found the shipment in the pos-
session of the transfer company and it could have been
recovered at that time; that—

''The shipment then would have been located in the
warehouse of the transfer company and Hinshaw would
have delivered it to respondent. The loss in this case
occurred solely through the negligence of appellant in
notifying respondent that the goods had been received
by it and shipped out in car Art 10378, and through its
negligence in not using the information available and
in failing to notify respondent of its non-receipt.''

In arguing this contention the defendant takes the
false position that the transfer company acted without
its scope of authority in obtaining the fraudulent bill of
lading, recognizing, of course, that if the bill of lading
was obtained through fraud of defendant's agent, then
the rule could not apply.

We will first take up the question of agency. It is
claimed by the defendant that the evidence shows that
the transfer company delivered the goods to plaintiff
but that the clerk who counted them and found the short-
age told the agent of the transfer company to take the

shipment back and that the shipment was therefore taken back at the direction of the plaintiff; that the authority of the transfer company ceased when it delivered the shipment to plaintiff's agent. "The transfer company had no authority whatsoever under the admission in evidence to do any act other than to deliver the shipment to the appellant's depot." The fact of the matter is that the shipment was never delivered to the plaintiff. Part of it was taken to the freight station but hauled back to the transfer company's office because the papers made out by the defendant, that is, the bill of lading and its copy, called for more goods than those tendered. The statement of the checking clerk that the goods should be taken back was merely made in connection with his refusal to receive the goods and not by way of direction to the transfer company by the railway company who had no authority whatever over the former. There is no question but that there was no delivery of the shipment to plaintiff, because possession of the goods had never been transferred from the transfer company to plaintiff. [Gulf, C. & S. F. Ry. Co. v. Anderson-Clayton & Co., 246 S. W. 1031; 1 Hutchinson on Carriers (3 Ed.), sec. 105, pp. 102, 103; 10 C. J., p. 221; Mo. Pac. Rd. Co. v. McFadden, supra.] The fraud committed by the transfer company related to the delivery of the goods and the procuring of the bill of lading. The goods were delivered by the defendant to the transfer company to transport and deliver them to the railroad company, to obtain the execution of the bill of lading and to return it to the defendant. The authority of the transfer company extended to any act that was necessary to accomplish these purposes. In the procuring of the bill of lading without delivery of the goods we think the transfer company was clearly acting within the scope of its employment. [McElvain v. Railroad, 151 Mo. App. 126; 1 Hutchinson on Carriers (3 Ed.), sec. 108; 2 C. J., p. 859; Brown v. Railroad, 187 Mo. App. 104.] The negligence of plaintiff in paying the money in settlement of the claim cuts no figure in the case. [Koontz v. Bank, supra; Nordyke & Mar-

mon Co. v. Kehlor, supra, l. c. 654; Bone v. Friday, supra; Picotte v. Mills, supra; Hemphill v. Ins. Co., supra.] We will take up later the question of the claimed prejudiced change of degendant's position.

It is next contended by the defendant that its demurrer to the evidence was properly sustained "because one paying money to another under mistake of fact is not permitted to recover such money when there has been such change of circumstances that the recovery thereof would prejudice the party receiving the money." The rule is stated in German Security Bank v. Columbia Finance & Trust Co., 85 S. W. (Ky.) 761, 763:

"The general rule is that, where money is paid by mistake, although there was negligence on the part of the person making the payment, it may be recovered back for the reason that otherwise the person receiving the money would be enriched at the expense of the other. But this rule is subject to the exception that the payment cannot be recalled when the position of the person to whom the payment was made has been changed to his prejudice toward his debtor in consequence of the payment."

[See also 30 Cyc. 1321.] The payment in this case was made on January 14, 1921. There is no evidence that defendant has been damaged in any way or his position changed by reason of the payment made on that day. There is no evidence as to when Hinshaw or the transfer company disposed of the goods. It was sometime after August 20, 1920, when the goods were taken back to the warehouse of the transfer company, but just when the evidence does not show. However, regardless of this, the evidence shows that Hinshaw was still in the business. There is no evidence that he was insolvent, or in fact that Hinshaw has refused to settle with plaintiff for his breach of trust, or that defendant has done anything to prejudice its claim against the transfer company for its fraudulent acts.

It is next contended that plaintiff "after an independent investigation and with full opportunity to as-

certain the facts, paid the money without question to respondent.'' In support of this contention defendant cites the case of McArthur v. Luce, 5 N. W. (Mich.), 451, and some other cases which are contrary to the Missouri rule, holding that the negligence of the one paying money under a mistake of fact does not preclude his recovery of it.

It is last insisted that plaintiff is estopped to deny the actual receipt of the goods in question and, therefore, it is estopped from claiming that there was a mistake. In this connection defendant states, "We have heretofore stated the facts, showing clearly that appellant was estopped to deny receipt of the goods.'' This refers to its contention that the transfer company had no authority to do anything other than to deliver the shipment to appellant's depot and that defendant is not bound by the act of the transfer company in fraudulently procuring the bill of lading, and that the loss was brought about by the negligent conduct of the plaintiff. But we have ruled the other points against the defendant and we shall, therefore, rule this point against it. In order that there be an estoppel there must be knowledge of the facts by the one claiming to have been estopped. [Freeland v. Williamson, 220 Mo. 217, 231.] Here, plaintiff's agents made the report to the defendant that it had received the goods, in good faith and without knowledge of the true situation. Plaintiff settled the claim and paid the money under the same conditions. Defendant sent plaintiff a copy of the bill of lading, inferentially asserting that it was genuine, that is, that the goods had been delivered and that the same had been lost in transit. For plaintiff would not have been entitled to the bill of lading unless the goods were received by it. Plaintiff mistakenly, but of course negligently, believed that the goods had been delivered to it and lost, and it settled the claim. There could not be estoppel under the circumstances.

The judgment is reversed and the cause remanded. All concur.