JOHN M. KELLOGG, J. Upon a sale of goods to be delivered, plaintiff paid to the defendants $100 in part payment and as earnest money. He alleges that the defendants failed to perform the contract upon their part, and he refused to receive the goods on account of their inferior condition. The defendants thereupon sold them, and they were bought in by another for the benefit of the plaintiff. He therefore secured the goods at a less price than he agreed to pay for them. It is evident he sustained no damages, unless he was entitled to recover back the $100. Perhaps technically he was entitled to a 6-cent verdict if the defendants had violated their contract. He was not required to bring an action in form to rescind the contract. He did not desire to rescind, but sought to enforce it, and upon an allegation of the defendants' default he sought to recover the $100, and other alleged damages.

It is evident, therefore, that the action was brought to recover the $100, and the court charged that he was not entitled to that, and, of course, the jury beat him. If the jury had found 6 cents damages, he was thoroughly beaten for bringing a 6-cent case in the Supreme Court, and would have been charged with the costs. If only entitled to 6 cents damages in a case of this kind, it would be immaterial whether the jury found with him or against him, so far as the right to appeal is concerned. The verdict, therefore, was not materially wrong if the plaintiff was only entitled to 6 cents damages. It was a fair question upon the evidence whether the plaintiff was not entitled to recover $100 on account of the defendants' breach of the contract; but the plaintiff was laughed out of court by having his case characterized by the presiding judge as a 6-cent lawsuit. It cannot be said that, if the case had been properly submitted to the jury, the plaintiff would not have recovered. I am satisfied that the erroneous charge prevented the plaintiff from having the fair and impartial consideration of his case which it was entitled to receive.

In my judgment, the judgment should be reversed, and a new trial granted, with costs to appellant to abide event.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur, except COCHRANE and HOUGHTON, JJ., who dissent.

---

BRAMLEY v. ULSTER & D. R. CO.

(Supreme Court, Appellate Division, Third Department. January 4, 1911.)

1. CARRIERS (§ 59*)—CARRIAGE OF GOODS—CONTRACTS—NATURE OF BILL OF
   LADING—"NEGOTIABLE INSTRUMENT."
       While a bill of lading is in a sense a negotiable instrument, it is not
   such as to preclude in the hands of a bona fide purchaser all inquiries
   respecting its issue.

   [Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 179–190; Dec.
   Dig. § 59.*

   For other definitions, see Words and Phrases, vol. 5, pp. 4767–4770;
   vol. 8, p. 7731.]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. CARRIERS (§ 57*)—CARRIAGE OF GOODS—LIEN OF FREIGHT—"PREPAID."

Where a person claimed a shipment as purchaser of the bill of lading issued by the initial carrier, he was not entitled to recover it in replevin from the connecting carrier in the absence of any showing except the bill of lading which did not recite the class of freight shipped, the amount of charges prepaid, or the amount of charges prepaid on account, but merely in a space headed "If charges are to be prepaid, write or stamp here 'To be prepaid,'" contained the word "Prepaid"; such instrument not being prima facie proof that the freight had been fully paid.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 169–178; Dec. Dig. § 57.*]

Sewell, J., dissenting.

Appeal from Trial Term, Delaware County.

Action by E. S. Bramley against the Ulster & Delaware Railroad Company. Judgment for plaintiff, and defendant appeals. Reversed, and new trial granted.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Amos Van Etten, for appellant.

A. G. Patterson, for respondent.

HOUGHTON, J. The Corn Products Refining Company delivered to the Chicago, Peoria & St. Louis Railway Company at Granite City, Ill., for shipment to Halcottsville, N. Y., which is located upon the line of the defendant's railroad, a car load of glucose feed. A bill of lading was delivered describing the Corn Products Refining Company as both shipper and consignee, and indicating that the shipment was to be made after leaving the road of the initial carrier, by the Michigan Central, Ontaria & Western and the road of the defendant from Kingston, N. Y. For some reason which does not appear, the car was diverted from this route and was delivered to the defendant railroad company by the Delaware & Hudson Company at Oneonta for transportation to its destination instead of by the'Ontario & Western at Kingston. On the waybill delivered to the defendant by the Delaware & Hudson Company was a statement that a $4 freight bill remained unpaid. According to the published rates of the defendant it was entitled to $36 for delivering the car from Oneonta to its destination. On arrival of the car at Halcottsville, the plaintiff presented to the defendant the bill of lading which the Corn Products Refining Company had received from the initial carrier, duly indorsed to himself, and for which he had paid the full market value of the consignment. On this bill of lading were spaces for filling in the class of freight shipped, and the amount of charges prepaid, or the amount of charges prepaid on account, all of which spaces were blank. In the space headed, "If charges are to be prepaid, write or stamp here, 'To be prepaid,'" was written the word "Prepaid." The defendant had no knowledge of the contents of this bill of lading until after it had transported the freight, and the plaintiff, when he purchased the bill of lading had no knowledge that the defendant had received the car from the Delaware & Hudson Company with directions to collect $4

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

back charges. The plaintiff insisted that all freight charges had been prepaid, but the defendant refused to deliver until its own charges as well as the back charges were paid to it. The plaintiff declined to pay any part of either and replevined the property, and from a judgment rendered in his favor the defendant appeals. In his complaint the plaintiff alleges that the freight charges had been fully prepaid, and this is denied by the defendant's answer. The plaintiff insists that the defendant is bound by the recitals of the bill of lading that the freight had been prepaid, and that it had no lien for its own charges in the absence of affirmative proof on its own part that full freight was not paid to the initial carrier. We are of opinion the burden was upon the plaintiff to prove that the freight charges had been prepaid, and that the bill of lading was not prima facie proof of that fact.

It was apparent upon inspection that the bill of lading was incomplete. The class of freight was not enumerated nor was the amount prepaid specified. The defendant had no agreement with the initial carrier for joint rates, and such initial carrier.had therefore no authority to make a contract in its behalf. All it could do, according to the terms of the bill of lading, and as matter of law, was to act as agent for the shipper for the transportation of the freight over other lines after it left its own. For some reason the car was diverted from the specified route, presumably by direction of the shipper or the initial carrier. The only knowledge the defendant had was from the waybill delivered to it by the Delaware & Hudson Company specifying that $4 freight charges remained unpaid. It was the defendant's duty as common carrier to accept the freight and transport it to its destination on its own road. Having done so it had a lien upon the property transported for the payment of its proper freight charges unless they had in fact been paid to the initial carrier. When the bill of lading was presented by the plaintiff to the defendant nothing appeared thereon from which the defendant could determine that such charges had been received by the initial carrier except the bare word "Prepaid." Assuming that the defendant could itself classify the freight as the initial carrier must have classified it, if the amount prepaid had appeared, it no doubt could have ascertained from the printed rates whether the amount due it was included in such payment. The simple statement that the freight had been prepaid, made by the initial carrier with whom the defendant had no joint agreement, was not binding upon the defendant, and it was not concluded by such recital.

While a bill of lading is in a sense a negotiable instrument, it is not of such a character as to preclude, in the hands of a bona fide purchaser, all inquiries respecting its issue. In Missouri Pacific Railway Company v. McFadden, 154 U. S. 155, 14 Sup. Ct. 990, 38 L. Ed. 944, its characteristics are defined as follows:

"A bill of lading is an instrument well known in commercial transactions, and its character and effect have been defined by judicial decisions. In the hands of the holder it is evidence of ownership, special or general, of the property mentioned in it, and of the right to receive said property at the place of delivery. Notwithstanding it is designed to pass from hand to hand,

with or without indorsement, and it is efficacious for its ordinary purposes in the hands of the holder, it is not a negotiable instrument or obligation in the sense that a bill of exchange or a promissory note is. Its transfer does not preclude, as in those cases, all inquiry into the transaction in which it originated because it has come into the hands of persons who have innocently paid value for it. The doctrine of bona fide purchasers only applies to it in a limited sense."

The defendant's railroad does not extend to the borders of the state, and it had the right, and it was its duty, to charge its posted traffic rates. N. Y. C. & H. R. R. R. Co. v. Smith, 62 Misc. Rep. 526, 115 N. Y. Supp. 838. It was entitled to know from the bill of lading, or otherwise before incurring any liability for nondelivery, what amount the initial carrier had collected from the shipper so that it might determine not only whether its own charges were included, but whether the published rates had been observed, for the carrier's lien could be discharged only by the payment of the established schedule rates. Texas & Pacific Railway Co. v. Mugg, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011. The plaintiff did not attempt to give the defendant any information on this subject when he demanded surrender of the freight without payment of charges, and gave no proof upon the trial that the freight had in fact been paid.

Whether the defendant would have been justified under the circumstances in refusing to deliver the goods without payment of its charges, even though the initial carrier had in fact received full payment, we do not now consider. So far as the present judgment is concerned, we think it was incumbent upon the plaintiff, and not upon the defendant, to prove that the full freight charges had been prepaid.

The judgment must be reversed and a new trial granted, with costs to the appellant to abide the event. All concur, except SEWELL, J., dissenting.