Dore, J.
This action was instituted against defendants (herein “ Barr ”) for damages for alleged conversion of a cargo of sage and laurel leaves purchased in Famagusta, Cyprus, for transshipment to New York. Philip Kachurin (the buyer), original plaintiff, died after the record on appeal was completed; his executors are substituted as party plaintiffs and will be referred to as “ plaintiff ” or “ buyer ”. Plaintiff purchased the merchandise from Matossian and Georgallides, two separate vendors in Cyprus. The terms of the purchase were “ f.o.b. Cyprus ” and the vendors arranged to ship the merchandise from Cyprus to Port Said, Egypt, on the S. S. Fouadieh, of the Pharaonic Mail Line, through the shipper’s agents in Cyprus, Orphanides & Murat.
Five through bills of lading identical in form except as to quantity of the bales and tonnage, etc., were issued by the *394 ship’s master or agent covering the shipment' of fifty tons of sage and laurel leaves from Cyprus to New York; each was stamped with the legend “ freight prepaid ”. These will' be referred to as the ‘ ‘ through bill of lading. ’ ’. The through bill provided that the contracts were governed by the law of England, and also expressly provided for “ transhipment in Port Said ”, Egypt. The goods were shipped on the Fouadieh out of Cyprus to Port Said, a distance of about 180 miles across the Mediterranean Sea, where they were transshipped for'delivery to New York on board the S. S. El Nil operated by Alexandria Navigation Co. The forwarding agents for Orphanides at Port Said were American Eastern Trading & Shipping Company; and at Orphanides’ request they had arranged for the freight space on the on-carrying ship before the cargo moved from Cyprus. Ludvigsen, vice-president of Eastern, supervised the transaction of transshipment at Port Said where the cargo was discharged and remeasured before being placed upon the on-carrying ocean steamship El Nil of the Red Rose Line, owned by the Alexandria Navigation Company.
Additional freight, based on cubic measurement of the cargo, in the sum of $4,200 was demanded by the El Nil. Ludvigsen protested against the additional freight and notified Orphanides who finally instructed him to pay the $4,200 and Orphanides reimbursed American Eastern.
Ocean bills of lading were issued at Port Said by the S; S. El Nil and forwarded by American Eastern to defendant Barr in New York as consignee to. insure collection of the additional freight from plaintiff:, the buyer and owner of the cargo.
When in late November or early December, 1941, the cargo arrived in New York on board the S. S. El Nil, plaintiff on presenting the through bill of lading demanded the ocean bills of lading or carrier’s certificates, but defendant Barr stated that he was a mere stakeholder and was acting on instructions not to deliver the ocean bills until the additional freight of $4,200 had been paid. Barr told plaintiff that unless he settled the controversy with the shippers or paid the additional $4,200 freight under protest or put up a bond, Barr could not deliver the ocean bills or carrier’s certificates. After demands to deliver and refusals, this action was instituted in June, 1942, eight months after the goods arrived.
The trial court held that the through bill of lading conclusively fixed a computation of freight charges upon weight or tonnage only and that neither custom nor clauses in the through *395 bill permitted the on-carrier (the ship that took the goods after transshipment at Port Said) any authority to change the method of computation from a tonnage basis to a cubic measurement basis of the cargo. He also held that Barr assumed dominion over the property hostile to the true owner’s rights and that defendant Barr was accordingly guilty of conversion for failure to deliver the cargo to Kachurin on presentation of the through bill. He dismissed the first cause of action against Barr on contract but directed judgment in plaintiff’s favor against Barr on the second cause of action for conversion in the sum of $32,618.70 with interest. From the judgment of $41,483.36 defendant Barr appeals. Plaintiff does not appeal from the court’s disposition of the other causes of action.
The main issue on appeal is whether the through bill of lading alone is the contract between the parties or whether the through bill and the ocean bill of lading are integral parts of a single contract binding on plaintiff.
Defendant Barr is a customs broker and freight forwarder. The ocean bills of lading were forwarded to him as consignee with express instructions not to deliver them to plaintiff except on the payment of $4,200, the additional freight exacted by the carrier at Port Said. Barr’s fee was $2 per bill of lading and as there were five bills he would normally receive $10 for his part in the transaction. The trial court has directed him to pay plaintiff over $41,000.
In our opinion the judgment is erroneous and should be reversed and the complaint dismissed as to Barr. Plaintiff’s contention that the through bill of lading is the sole contract of shipment or carriage is conclusively disproved by the record evidence, including plaintiff’s own documentary proof.
The war emergency transshipment clause stamped upon the face of the through bill of lading expressly provides: “ The owners of the goods [plaintiff] shall be bound by the terms and conditions of the Bill of Lading of the on-carrying steamer.” By this clause, expressly consented to by both parties and made part of the contract of affreightment, plaintiff consented to be bound by the terms and conditions of the ocean bill of lading. In the light of the background revealed in the record and the facts and circumstances under which this shipment was made, such clause was entirely appropriate and indeed to be expected. The face of the through bill provided for “ transhipment in Port Said ”. This must be read with the above clause on the face of the through bill and other clauses hereinafter referred to. At the time this shipment was made during the difficult and *396 dangerous shipping conditions of World War II, the Alexandria line was the only steamship line plying between Egypt and New York. Plaintiff, a purchaser of many cargoes from Cyprus at or about this period, was fully aware of the conditions. Plaintiff’s witness Shubert, Kachurin’s controller and office manager for twenty-five years, admitted that plaintiff knew that the local carrier S. S. Fouadieh was to deliver the merchandise at Port Said, Egypt, to an ocean carrier for transshipment and transportation to New York, and that plaintiff knew there were no direct boats from Cyprus to New York at that time. He also admitted that under the f.o.b. contract all the shipper had to do was to get the merchandise on board a steamer in Cyprus, that in this case the shipper did this, and from that time the purchaser was responsible for whatever freight was properly assessable against the merchandise.
Obviously, an ocean carrier carrying-the goods for about 4,000 miles from Port Said to New York could not be bound by any terms as to weight or measurement of the cargo made by the parties to the transshipment on the short journey from Cyprus to Port Said. As the shipment was “ f.o.b. Cyprus ”, all freight after leaving the port of Cyprus was for the buyer’s (plaintiff’s) charge and risk. By the terms of the above-quoted clause, plaintiff, as buyer, agreed to be bound by the terms and conditions - of the ocean bill of lading. This was expressly within the contemplation of the parties, but plaintiff in his brief entirely avoids any discussion of this clause which appears on the face of the contract he claims to be the only binding agreement.
But that is not all. Also on the face of the through bill of lading it is provided that if the bill is issued for a port where the steamer will not call (as was here the case) “ the carrier shall have the right at any port of call to discharge the goods * * * and finally tranship them to destination on any other ship ” and “ all expenses incurred by the carrier * * * until they are delivered to the connecting carrier shall be for account of the owner and/or consignee of the goods [here plaintiff] as well as any difference in the oncarrying freights in case there has been an increase in the meantime.” The through bill also provides: “The carrier shall have a lien on the goods for such extra expenses and freight. ’ ’
• The through bill of lading also provided that the goods to be carried and delivered are “ subject to the exceptions, limitations and conditions set forth above and on the back hereof * .* On the back of the through bill, it is further expressly *397 provided that when the goods are forwarded by steamer of any other line, “ shippers and consignees [here plaintiff] are to be bound by all clauses and conditions of the usual Bill of Lading of such Steamer.” That clearly refers to the ocean bill of lading. It was further provided that the ship “is at liberty to weigh, measure, value or count * * * all "* * * of the goods * * * and to calculate the total weight, measurement * * * or number ”.
The above-quoted clauses of the through bill of lading demonstrate that the ocean bill of lading was in contemplation of the parties and, by the express terms of their conceded contract in the through bill, an integral part of the contract of carriage so that the terms and conditions thereof were binding on plaintiff.
The ocean bill of lading provides: “ Freight on Goods tran- • shipped to be payable on gross weight or measurement, as ascertained in port of transhipment or port of discharge at Shipowner’s option. * * *
“ The Shipowner shall have a lien and right of sale by public auction or otherwise over the Goods, not only for the freight and charges due thereon, whether payable in advance or not, but also for all amounts in anywise to become payable to him under the provisions of this Bill of Lading * * * ”,
‘ ‘ The weight and measurement of all Goods shall, if required by the Shipowner, be verified at the port of Discharge, and freight, although prepaid, adjusted and the difference, if any found due, shall be paid accordingly, previous to delivery. ’ ’
Plaintiff contended that the first clause above quoted from the ocean bill is somehow limited by the phrase “ Mediterranean Homeward ” which appears directly under “ Bed Bose Line ” on the top of the ocean bill of lading." Plaintiff claimed that phrase in some way limits the clauses of the bill of lading printed on its face so as to make them not applicable to this transshipment. This contention is not borne out by any fair construction of the document or the proof at trial. In any event, the other clauses which are expressly made conditions of the transshipment are clearly applicable.
On trial, plaintiff admitted that if a proper charge for the excess freight based upon cubic foot measurement at Port Said, Egypt, was assessable against the merchandise, then the plaintiff had “ no cause of action ”. The proof showed that the Alexandria Navigation Company remeasured the cargo before loading and found a higher measurement than originally stated by Orphanides.
*398 The English rule is stated in Carver on Carriage of Goods by Sea (8th ed., § 107, p. 188) as follows: “It is common in through bills of lading to stipulate that, so far as the ocean transit is concerned, the property carried shall be subject to the terms of the form of bill of lading in use by the steamship company which performs the ocean carriage. If, as frequently happens, the terms of the two bills of lading are inconsistent, the provisions of the ocean bill of lading must, ip such case, prevail.” (Citing English cases.) When transshipment, as here, was expressly contemplated and agreed to by the parties, it was, as indicated above, the right of the on-carrier at the port of transshipment to reweigh or remeasure the goods at shipowner’s option and accordingly the El Nil remeasured the cargo at Port Said and assessed the $4,200 additional freight which it demanded and received.
' The rule in the Federal courts on facts similar to these * indicates that the two bills of lading constitute a single contract of affreightment. In Cudahy Packing Co. v. Munson S. S. Line (22 F. 2d 898, 901) the Circuit Court of Appeals, Second Circuit, said by Augustus Hand, J.: “ But it seems established that the provisions in the ocean bills óf lading referred to in the through bill of lading were part of the contract of which the shipper was chargeable with notice.”
Other cases cited in the Cudahy case approved the ruling that when, as here, the terms of the ocean bill are incorporated by reference into the through bill of lading, they are a part of the contract of affreightment and the two must be read together as if they constituted a single document. The same rule applies in the State courts (Jones v. Cunard Steam Ship Co., Ltd., 238 App. Div. 172).
' • Plaintiff contends that the insertion, in the through bill of lading under the legend “ Weight and/or Measurement ”, of the words “ 10 tons ” was an irrevocable waiver on the part of the seller and the carriers of any right to measure the merchandise by cubic content. This claim is disproved by the documentary evidence above referred to and by the overwhelming weight of the relevant evidence in this record. Both carriers reserved the right to determine the freight on “ gross weight or measurement, as ascertained in port of transhipment ”, (Italics supplied.) In accordance with the terms thus agreed upon, the ocean carrier measured at Port Said, found the measurement in conflict with those provided by the ocean carrier and assessed the $4,200 additional freight. Plaintiff’s own exhibit (Exhibit 51), a letter from Orphahides, shows that sage and *399 laurel leaves were calculated on a cubic foot measurement per ton weight. There is nothing in the contract which precluded the on-carrier from using a cubic foot measurement as the standard of its charges. The additional freight was imposed in strict accordance with the through bill of lading read with the terms of the ocean bill incorporated therein, and therefore defendant properly insisted that the additional freight be paid before he surrendered the ocean bill or carrier’s certificate.
In the light of the facts and proof disclosed, the legend “ freight prepaid ” was not conclusive evidence that the full freight from Cyprus to New York including any additional freight of the on-carrying steamer was paid. In Bramley v. Ulster & Delaware R. R. Co. (142 App. Div. 176, affd. 206 N. Y. 716) it was held that such notation is not even prima facie evidence of the payment of through freight.
The term “ f. o. b.” means “ free on board ”, that is, that the seller’s liability ceases when he places the goods safely on board the steamer, here at Famagusta, Cyprus, and the buyer’s liability commences at that time. That applies to all carrying charges as well as the risk of loss. At trial, plaintiff admitted in one part of the record that plaintiff has the burden of proving that the full freight from Famagusta to New York was paid. Plaintiff so alleged in his complaint and defendant denied the allegation. While the court at trial recognized the rule, it did not require compliance therewith in its decision, although plaintiff wholly failed to prove that he had paid the full freight. In the Bramley case (supra) the court said (p. 178): We are of the opinion the burden was upon the plaintiff to prove that the freight charges had been prepaid and the bill of lading was not prima facie proof of that fact.”
Barr never denied plaintiff’s ownership nor his right to receive the cargo on payment of the freight charges. The proof establishes that plaintiff could have obtained the merchandise by paying the $4,200 under protest or by putting up a bond or filing a guarantee with the steamship company, as he did in connection with other consignments about the same time. Concededly, in this transaction no one of these things was done.
Barr made continuous efforts to have the dispute adjusted and exhibited all the documents indicating the basis on which the Alexandria Steamship Company had computed the additional freight. Barr as a nominal stakeholder or documentary agent was not required at his peril to adjudicate the rights as between the carriers and the plaintiff but properly refused to deliver on plaintiff’s demand without proof of plaintiff’s right to *400 present possession on payment of the additional freight, and, ■accordingly, was not' guilty of conversion.
Defendant adequately established the custom, universally recognized- during the period in question at the port of transshipment, to remeasure or reweigh the cargo and assess freight on the basis of the measurements. There was no proof to the contrary. The custom. did not vary the terms o E the contract but, as above indicated, was in conformity with such terms.
It was stipulated that the disposition of the third cause of action, involving another transshipment on the S. S. “ Kawsar ”, would depend upon the court’s decision as to the second cause of action. For the reasons above stated, the third cause of action should also be dismissed.
The judgment so far as appealed from should be reversed, with costs and the complaint dismissed, with costs.
Callahan and Peck, JJ., concur; Glennoñ and Cohn, JJ., dissent and vote to affirm.
Judgment, so far as .appealed from, reversed,, with costs and the complaint dismissed with costs. Settle order on notice.